```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRACY RENEE THOMAS,

                Plaintiff,          14-CV-6302

           -v-                      DECISION AND
                                      ORDER
CAROLYN W. COLVIN,
Acting Commissioner OF Social Security,

                Defendant.
_____
```

Tracy Renee Thomas ("plaintiff") brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied her applications for supplemental security income ("SSI") and disability insurance benefits ("DBI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## **PROCEDURAL HISTORY**

On March 28, 2011, plaintiff filed applications for DIB and SSI alleging disability as of February 21, 2011 due to back and hip problems. Administrative Transcript("T.") 68-79, 131-150. Following an initial denial of that application on October 28, 2011, plaintiff testified at a hearing was held at her request on October 2, 2012 before administrative law judge ("ALJ") Michael W.

Devlin. T. 35-57. An unfavorable decision was issued on December 17, 2012, and a request for review was denied by the Appeals Council on April 11, 2014. T. 1-6, 17-34.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made the following findings: (1) plaintiff met the insured status requirements of the Act through September 30, 2013; (2) she had not engaged in substantial gainful activity since February 21, 2011, the date of the onset of her alleged disability; (3) her low back pain with right radiculopathy versus sciatica, status post myofacial strain lumbar spine, right ankle post soft tissue injury and surgery, and bilateral patellofemoral syndrome were severe impairments; (4) her impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1; and (5) plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk about six hours in an eight-hour work day; sit about six hours in an eight-hour work day; be allowed to alternate positions between sitting and standing every 30 to 40 minutes; occasionally push and/or pull 20 pounds; occasionally

climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds. T. 22-23.

With respect to finding number four, the ALJ found that plaintiff's physical impairments did not meet or equal the criteria for any impairment listed in Appendix I to Subpart P, specifically Listings 1.02 and 1.04. T. 23.

## DISCUSSION

### I.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Section 405(g) limits the

3

scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

**II. <u>Relevant Medical Evidence</u>**

Plaintiff injured her lower back on October 16, 2010 when she was working as a home health attendant and had attempted to move a patient from a bed to a wheelchair. She was subsequently treated or evaluated, or both, by the Lattimore Physical Therapy Center from November 2010 to January 2012, orthopedist Dr. Capicotto and his assistant Margaret Casper from late 2010 to 2012, pain management specialist Dr. Patel from 2011 to early 2012, Dr. Yoo of Pain Interventions in 2011, orthopedic surgeon Dr. Bergeron in July 2011, consultative internist Dr. Boehlert in September 2011, physical therapist Jillian Collins in January 2012, orthopedist Dr. Nunez in February 2012, and orthopedic surgeon Dr. Posnick in June 2012.

On March 29, 2011, Dr. Yoo noted that plaintiff presented with a chronic history of axial predominate low back pain and a normal MRI. T. 257-258. Her use of a TENS unit provided some relief. T. 257. Plaintiff reported an achy, dull pain in the right and left hips and constant mild pain in her lower back which is lessened by lying down. T. 257. Prior recommended treatment included physical

therapy, a TENS unit, massage therapy, and prescribed medication. T. 257. A physical examination revealed trigger points in the thoracic and lumbar spine and left lumbar paraspinal musculature, pain with flexion and extension of the lumbar spine and left rotation, tenderness over the left facet joints at L4-L5 and L5-S1, left sacroiliac joint tenderness, and normal strength, sensation, and reflexes of the lower extremities bilaterally. T. 259.

Plaintiff was diagnosed with lumbago, lumbosacral spondylosis without myelopathy, and sacroiliitis. T. 259. Dr. Yoo recommended facet joint injections for diagnostic and therapeutic purposes with the possibility of sacroiliac joint injections at a later date. T. 259. He opined that plaintiff was "totally disabled" from her normal work duties, and he was unable to determine a return to work date. T. 259.

A treatment note from Lattimore Physical Therapy dated January 14, 2011 revealed plaintiff's pain "decreased significantly" with physical therapy. T. 329. A February 25, 2011 MRI of the lumbar spine was essentially normal, showing the unremarkable sacralization of L5. T. 290.

March 21, 2011, Margaret Casper, RPA-C, assessed plaintiff in relation to her worker's compensation claim and diagnosed strain of the lumbar region and low back pain, noting that although plaintiff's condition improved with physical therapy (*see* T. 282-289, 298-301), there was doubt whether it would continue to be

helpful. T. 281, 541-542. On April 4, 2011, Dr. Capicotto noted plaintiff's tenderness over L5-S1 laterally and subjective decreased sensation of the right anterolateral femoral cutaneous nerve. T. 279, 530-531. Dr. Capicotto assessed low back pain, but he was unable to pinpoint the source of her pain and opined that surgery would not be beneficial. Noting that there was "nothing left for us to do," he recommended a pain specialist and a rheumatology or neurology consult and concluded that she was "totally disabled from a home health aid perspective." T. 279, 291.

In a residual function capacity questionnaire ("RFC") and a medical source statement dated January 11, 2012, Dr. Capicotto opined that plaintiff could sit for three hours and stand and/or walk for three hours in an eight-hour work day with permission to shift positions at will and take 20 to 30 minute unscheduled breaks. T. 303. Plaintiff could lift and carry up to 50 pounds occasionally and up to ten pounds continuously. T. 304, 306. Plaintiff could occasionally climb ladders or scaffolds, stoop, kneel, crouch, and crawl, frequently balance, and continuously climb stairs and ramps. T. 309. Plaintiff had no environmental limitations apart from occasional exposure to vibrations and no exposure to unprotected heights or moving mechanical parts. T. 310. Plaintiff had no limitations on daily living activities. T. 311.

On June 9, 2011, Dr. Yoo noted that plaintiff found no pain relief from the left facet joint injection given up on his recommendation, and he suggested a left sacroiliac joint injection. T. 264. On August 9, 2011, Dr. Yoo noted that plaintiff's left sacroiliac joint injection provided no pain relief. T. 254, 262, 292. Dr. Yoo recommended continuing current medications, ibuprofen, Tylenol, Flexeril, and Neurotin, and starting Tramadol and aquatherapy. T. 254. Plaintiff continued to be unable to return to work. T. 255, 293. Although plaintiff's pain and range of motion improved after three physical therapy sessions between October 28 and November 10, 2011, she dropped out of the program. T. 314-318.

Plaintiff underwent an independent medical examination and medical record review by Dr. Bergeron in July 2011. T. 494-501. Plaintiff had a normal gait with increased lumbar pain during the toe and heel walk. T. 497. Plaintiff had full range of motion in the lumbar area with some increased pain in the extreme ranges of motion. T. 497. She had tenderness in the left low lumbar radiating down toward to the left buttock, but no radiation down to the lower extremities. T. 497. Plaintiff reported occasional numbness over the right lateral thigh and calf and more pronounced pain on the left side. T. 497. Reflexes are preserved and symmetric at the knees and ankles, and there was no focal motor weakness. T. 498.

Dr. Bergeron diagnosed mechanical low back pain with an entirely negative MRI, unexplained plaintiff-reported radiculitis, good range of motion, and a normal neurological status apart from some altered sensation. T. 500. The prognosis was fair in light of her young age and normal MRI. T. 500. With respect to plaintiff's work restrictions, Dr. Bergeron opined that she would be able to have a position that allowed her to sit, stand, and walk as tolerated with no standing or walking more than about 30 to 40 minutes per hour. T. 500. She could push, pull, lift or carry 20 to 25 pounds occasionally and should avoid stooping, reaching, crawling, working at heights, and climbing ladders. T. 500. Dr. Bergeron recommended continuing with pain management, a home exercise program, and current medications. T. 500.

Dr. Boehlert examined plaintiff on September 23, 2011 at the request of the Division of Disability Determination, and she diagnosed low back pain with right radiculopathy versus sciatica and right ankle post soft tissue surgery pain with a fair prognosis. T. 269. The examination revealed no abnormalities apart from a sensory deficit in the right knee (neurologic) and a positive straight leg raise exam on the right with pain referred into the buttocks (musculoskeletal). T. 269. Dr. Boehlert opined a mild to moderate limitation to heavy lifting, heavy bending, and twisting of the lumbar spine, heavy ambulation, and repetitive standing or repetitive exertion in a standing position. T. 270. A

lumbosacral spine x-ray was negative, revealing "relatively well maintained" vertebral bodies and intervertebral disc spaces. T. 271.

In November 2011, plaintiff reported that although therapy was going well, she continued to experience low back pain that radiated to her hips. T. 295. She also reported that Neurontin had previously helped a burning sensation that radiated from her right hip to her knees. T. 295.

On February 14, 2012, Dr. Nunez conducted a physical examination of plaintiff and reviewed her medical records. T. 435-438. His examination revealed the following range of motion of the thoracolumbar spine: forward flexes 90/90 degrees, extends 20/25 degrees; side bends to the left 30/45 degrees and to the right 40/45 degrees; axial rotation is 60/80 degrees to the left and right. T. 436. Lying supine, plaintiff has decreased sensation in the L3 dermatome on the right side with straight leg raise causing pain at 60 degrees on right and left side. T. 436. Dr. Nunez diagnosed status post myofacial strain of the lumbar spine, "long since resolved," and the absence of any clear-cut radicular type of symptomatology. T. 438. In the absence of objective findings, Dr. Nunez opined that: there was no need for a repeat MRI or further treatment; plaintiff could return to full-duty work without restriction; and she was not disabled. T. 438.

In narrative reports to the Worker's Compensation Board dated January 26 and March 22, 2012, Dr. Patel stated that plaintiff's percentage of temporary impairment was 50%. T. 449. In a treatment note dated March 6, 2012, Dr. Singh noted that plaintiff was permitted to return to full-duty work without restriction. T. 320.

Dr. Posnick evaluated plaintiff's knee pain on June 19, 2012. T. 333. After a physical examination, he diagnosed plaintiff with left greater than right patellofemoral syndrome. T. 333. His recommended treatment plan consisted of activity modification, weight loss, knee-friendly and core and hip-strengthening exercises, and Tylenol or nonsteroidal anti-inflammatory medications. T. 333. She was also given a knee brace. T. 333. On August 21, 2012, Dr. Posnick noted that her condition was "clinically improving." T. 334.

### III. **Non-Medical Evidence**

Plaintiff completed the 11th grade and unsuccessfully pursued a GED. T. 42. She testified that she had been experiencing back pain since the age of 18, and she had surgery on her ankle in 2008 after a slip and fall incident while working at a nursing home. T. 39-40. On October 16, 2010, plaintiff injured her back while trying to lift a patient who was partially paralyzed. T. 40-41. Plaintiff stopped working and filed a worker's compensation claim. T. 41. At the time of the hearing, plaintiff continued to have left lower back pain and right hip and ankle pain. T. 42. She had

"good days" and "bad days," and she took "Tramadol to get rid of the pain" and "Tylenol to relieve some of the swelling from [her] ankle." T. 42. The medication relieved her pain, which was worse in the morning, for ten to 30 minutes. T. 43. On a daily basis, plaintiff cared for her two children, cleaned, and cooked. T. 43. She took Neurontin for burning hip pain brought on by sciatic nerve damage and prolonged sitting or standing. T. 43-44. Plaintiff also uses a TENS unit and a heating pad for an hour or two every other day. T. 44. Plaintiff testified that neither injections nor physical therapy relieved her pain, and she declined to wear prescribed back and ankle braces due to discomfort. T. 45. She did, however, wear a prescribed knee brace and was waiting for the swelling in her knee to decrease. T. 46. Plaintiff testified that she can walk for only ten minutes and that her "knees give out" on occasion. T. 47. She can sit for 20 minutes and stand for 15 minutes at a time, and she is able to walk up and down stairs slowly. T. 47-48. She can lift up to nine and a half pounds. T. 48. Plaintiff took medication to help with her disrupted sleep pattern. T. 48. She had no difficulty showering or dressing herself. T. 49. In addition to caring for her young son all day and her daughter after school, plaintiff provided paid after-school care to the seven-year-old son of a family member. T. 51-52.

During the hearing, the ALJ posed a hypothetical question to the VE, requesting an opinion whether an individual of plaintiff's age, education, and experience who could perform light work with the following limitations: occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour work day; sit about six hours in an eight-hour work day; sit about six hours in an eight-hour work day; be allowed to alternate positions between sitting and standing every 30 to 40 minutes; occasionally push and/or pull 20 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. T. 53.  The VE responded that plaintiff could perform the light, unskilled jobs of a counter clerk, of which there were 108,648 positions nationally and 1,310 positions locally, an agricultural produce sorter, of which there were 3.3 million positions nationally and 495 positions locally.  T. 54.

The ALJ posed a second hypothetical question requesting an opinion whether an individual of plaintiff's age, education, and experience who could perform sedentary work with the following limitations: occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk at least two hours in an eight-hour work day; sit about six hours in an eight-hour work day; be allowed to stand for one to two minutes after sitting for about 30 to 40 minutes and sit for one to two

minutes after standing for 30 to 40 minutes; occasionally push and/or pull ten pounds, climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. T. 54. The VE opined that plaintiff could perform the sedentary job of a label pinker, of which there were 1.3 million positions nationally and 455 positions locally. T. 55. The VE further opined that if either of the following limitations were added to either hypothetically, no jobs could be identified: missing four days of work per month or being off task two hours in an eight-hour work day. T. 55.

### IV. **The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence.**

Here, the ALJ determined that plaintiff had the RFC to perform light work with the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk about six hours in an eight-hour work day; six about six hours in an eight-hour work day; be allowed to alternate positions between sitting and standing every 30 to 40 minutes; occasionally push and/or pull 20 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds. T. 23.

"It is well-settled that 'the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

13

observations).'" *Hogan v. Astrue*, 491 F.Supp.2d 347, 354 (W.D.N.Y.2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.1996), citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir.1998).

In this case, after setting forth plaintiff's RFC, the ALJ wrote a detailed summary most of the medical evidence in the record, which includes treatment notes from plaintiff's medical providers from 2010 to 2012. T. 24-28. The ALJ reviewed plaintiff's extensive treatment history, including the assessments of her several treating sources. The ALJ then discussed how the medical evidence to which he referred and relied upon supported his conclusion that plaintiff could perform light work with the restrictions listed above.

The Court concludes the ALJ's RFC finding is supported by the medical evidence contained in the record, including essentially negative diagnostic imaging, reports and opinions from treating medical providers and consultative examiners, plaintiff's own testimony, and the VE's opinion. The ALJ's decision is therefore supported by substantial evidence in the record.

Plaintiff specifically asserts that the ALJ's decision is flawed because he failed to properly evaluate her knee pain and obesity in combination with all of her other impairments. Plaintiff's memorandum of law, p. 16-20. Defendant responds that the ALJ's RFC finding is supported by objective medical evidence

related to her impairments, and plaintiff failed to provide evidence showing limitations arising out of her knee pain and obesity were not considered in the ALJ's RFC. Defendant's memorandum of law, p. 16-19.

Although plaintiff notes that many of her medical records and physicians' opinions were primarily focused on her low back pain, it is clear from the record that back pain was her primary complaint. 20 CFR § 404.1512 establishes a claimant's burden of proving disability and identifies evidence that a claimant may submit. Plaintiff is required to furnish medical and other evidence that the Commissioner "can use to reach conclusions about [plaintiff's] medical impairment(s) and its effect on [her] ability to work on a sustained basis." 20 CFR § 404.1512(a).

Here, the record reveals that despite there being scant objective evidence that plaintiff's knee pain affected her ability to work, the ALJ did consider her knee pain, noting in his decision that "[d]uring the hearing, [plaintiff] testified that she has constant back and knee pain, which is stronger in the mornings." T. 26. When examining the issue of plaintiff's knee pain, the ALJ, who was not required to simply accept plaintiff's testimony, retained the discretion to evaluate her subjective testimony concerning the pain. *See Mimms v. Heckler*, 750 F.2d 180, 185–186 (2d Cir.1984). In ALJ's determination, nonetheless, plaintiff's limitations included being permitted to alternate positions between

sitting and standing every 30 to 40 minutes, the occasional climbing of ramps and/or stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders, ropes, or scaffolds. T. 23. Despite plaintiff's contention that the ALJ failed to mention Dr. Posnick's evaluation in his decision, it is well settled that the ALJ is not required to discuss every piece of evidence submitted.

With respect to plaintiff's allegation concerning her obesity, the Commissioner does "not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p. There is little evidence of plaintiff's obesity in the record, and plaintiff neither listed obesity in her application for disability nor provided evidence that her alleged obesity affected her ability to work. Consequently, the ALJ was not obliged to address plaintiff's obesity. *See Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. Appx. 852, 854 (6th Cir.2003) ("the ALJ never received evidence suggesting [plaintiff] or her doctors regarded her weight as an impairment"); *see e.g. Fonseca v. Chater*, 953 F.Supp. 467, 471 (W.D.N.Y.1996) (though Commissioner's decision did not discuss plaintiff's high blood pressure, it was supported by substantial evidence where plaintiff failed any symptoms or limitations as a result). Moreover, although the ALJ does not specifically mention plaintiff's weight as an impairment, his decision referred to

Dr. Bergeron's evaluation, it was noted that plaintiff was five feet and four inches tall and weighed 182 pounds. T. 24, 497.

Plaintiff further contends that the ALJ's RFC determination contains functional limitations that contradict Dr. Boehlert's opinion, which the ALJ afforded great weight. Plaintiff's memorandum of law, p. 21-24. Dr. Boehlert opined, among other things, that plaintiff had a mild to moderate limitation in heavy ambulation and repetitive standing. Contrary to plaintiff's assertion, there is nothing in the RFC that plainly contradicts Dr. Boehlert's opinion, and there is no indication that the ALJ selectively chose evidence in the record to support his conclusion, even assuming, *arguendo*, that the RFC was not reconciled seamlessly with Dr. Boehlert's opinion. *cf. Royal v. Astrue*, 2012 WL 5449610, at *6 (N.D.N.Y.2012). The Court, therefore, finds plaintiff's final contention that the improper contradiction between the RFC and Dr. Boehlert's opinion infected the hypothetical posed to the VE also to be without merit.

I find that the ALJ properly assessed plaintiff's RFC, which accurately reflects her limitations as they are set forth in the medical evidence contained in the record.

### **CONCLUSION**

For the foregoing reasons the plaintiff's motion for judgment on the pleadings is denied, and defendant's cross-motion for judgment on the pleadings is granted. The complaint is dismissed

in its entirety with prejudice. The ALJ's decision denying plaintiff's claims for SSI and DIB is supported by the substantial evidence in the record.

ALL OF THE ABOVE IS SO ORDERED.

                                               S/ MICHAEL A. TELESCA
                               HONORABLE MICHAEL A. TELESCA
                               UNITED STATES DISTRICT JUDGE

DATE: July 20, 2015